[No. 6889.  Decided June 27, 1908.]

OSCAR SATHER, *Respondent*, v. HOME SECURITY SAVINGS
BANK *et al.*, *Appellants*, AMERICAN MILL AND TIMBER
COMPANY, *Defendant*.[1]

CORPORATIONS—STOCK—SALES—RESCISSION — FRAUD — EVIDENCE—
SUFFICIENCY.  The evidence is insufficient to warrant the rescission
of a sale of stock for fraudulent representations, where it appears
that plaintiff had agreed to purchase stock in a mill company as a
condition of securing employment, and the representations of the
officers of the company complained of related to matters of opinion
as to the value of stock, for which plaintiff paid $500 for stock of
the par value of $2,000, such fact showing that the stock was not at
par and being sufficient to put him on inquiry; and the purchaser
being an experienced millman who made an inspection of the mill
and was competent to estimate its value; and where plaintiff chiefly
relied upon representations as to skid roads and buildings on the
property of the company, when those matters did not occasion the
loss.

SAME—TRANSFER OF STOCK.  Money paid for stock sold and as-
signed cannot be recovered on the ground that the deal was not
consummated because the stock was not transferred on the books of
the company, where there was no obligation to get the stock so
transferred; the stock belonging to the purchaser as soon as paid
for.

Appeal from a judgment of the superior court for What-
com county, Neterer, J., entered April 20, 1907, upon find-
ings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action to recover money
paid for corporate stock.  Reversed.

*Hardin & Hurlbut (Dorr & Hadley,* of counsel), for ap-
pellants.

*Pemberton & Sather,* for respondent.

ROOT, J.—This action was brought by plaintiff to recover
$500 left by him with the Home Security Savings Bank, a
corporation, for the purchase of twenty shares of stock in the

[1]Reported in 96 Pac. 229.

American Mill and Timber Company, a corporation. From a judgment in favor of plaintiff, the defendant bank and Charles Cissna appeal.

Plaintiff in his second amended complaint alleges, in substance, that, in October, 1905, he sought employment as filer in the mill of defendant American Mill & Timber Company, and the officers of that company required him to take twenty shares of stock in said company and pay therefor $500 as a condition precedent to his acting as filer; that the president of said company referred plaintiff to appellant Cissna, stating that the latter would act as the company's agent in the matter; that plaintiff on October 14, 1905, did arrange with appellant Cissna to raise $500 upon notes and a real estate mortgage given by plaintiff and wife to appellant bank, the mortgage being for $700 principal and $126.20 interest added to the principal for the term of the loan; that plaintiff was to leave $500 of the loan in escrow with appellant bank and appellant Cissna, who was acting as plaintiff's agent for the purchase of said stock, the plaintiff reserving all rights to review the acts of said Cissna before finally accepting the stock. It further alleges that appellant Cissna and his son told plaintiff that defendant American Mill & Timber Company was in good financial condition, owned its mill plant and all machinery connected with the same and the lands where the mill was located, all of which he, the said Cissna, knew at the time to be false; that about October 20, 1905, plaintiff inquired of the president of said American Mill & Timber Company about plaintiff's stock, and was told that said company was in such financial embarrassment that the stock could not consistently be turned over to plaintiff. Plaintiff further alleges that appellant Cissna acted as the agent for plaintiff and also as agent for American Mill & Timber Company, and for the owners of the stock which the plaintiff was to purchase, and had an interest in said stock by way of a mortgage thereupon, and upon the plant of the

American Mill & Timber Company, which facts he did not disclose to plaintiff; that plaintiff had demanded return of $500, and the payment of the same had been refused.

Appellants, in their answer to the second amended complaint, deny that they, or either of them, were at any time agents for defendant American Mill & Timber Company, or for plaintiff; deny that $500, or any other sum, was left in escrow by plaintiff with appellant bank; deny that plaintiff reserved any right to review the acts of said appellant; deny that appellant Cissna, or his son, made representations to plaintiff as to the financial condition of the American Mill & Timber Company, or as to the property owned or controlled by it; deny that the bank had a mortgage on the stock in question, or upon the property of the American Mill & Timber Company; and allege affirmatively that, on October 14, 1905, plaintiff negotiated a loan of $700 from appellant bank, and that plaintiff and wife executed and delivered to the bank promissory notes aggregating $826.20, secured by a real estate mortgage; that, at the time of obtaining the loan, plaintiff instructed appellant bank to pay $500 of said amount to Leroy B. Simpson, for twenty shares of the capital stock of the American Mill & Timber Company, at the par value of $100 each, which stock was originally owned by one Hooker, and was held by the bank as collateral security for a debt by Simpson to the bank, which stock plaintiff was purchasing from Simpson; that the bank, in pursuance of said instructions by plaintiff, paid the $500, so loaned, to Simpson on October 16, 1905; that at said time it was agreed between plaintiff and appellant bank that the stock issued to Simpson as aforesaid and endorsed for the purpose of said transfer by Simpson, or stock issued in place and in lieu of the said Simpson stock, should be left with the appellant bank as additional and collateral security for the loan, and that the same was so left as collateral security.

Plaintiff's reply denies the affirmative matter in the answer, except that $500 was left for the purchase of twenty

shares of stock and that the stock was, when purchased, to be left as additional and collateral security for the loan.    Prior to May 15, 1905, Home Security Savings Bank became the owner of certain mill property and timber rights by bidding in the same at sheriff's sale upon execution, and on the 15th day of May, 1905, the appellant bank contracted with defendant American Mill & Timber Company to sell to it "all its right, title and interest" in the mill plant for $18,000, $5,000 of which was paid in cash and the remainder was to be paid in installments of $500 per month, and under said agreement, the said American Mill & Timber Company went into possession of the mill plant and property, and held possession thereof until the latter part of the month of October, 1905, when it abandoned the property and forfeited all its rights under the agreement, and the appellant bank again took possession of the property.    On September 22, 1905, Leroy B. Simpson gave appellant bank his note for $500, and as collateral security deposited with the bank twenty shares of stock of the American Mill & Timber Company, of the par value of $100 each, which stock was commonly known as the Hooker stock, being certificate No. 7, which was assigned to, and received by, Leroy B. Simpson about September 22, 1905, and then delivered to the corporation, and it issued to Simpson in lieu thereof certificate of stock No. 11 for a like number of shares.    Said certificates No. 7 and No. 11 were placed in the hands of appellant bank and retained by it at all times while it held the promissory note of Simpson, each of the certificates representing the same capital stock which was held as collateral security for said note.    About October 14, 1905, plaintiff and defendant American Mill & Timber Company entered into an agreement whereby the company employed plaintiff as filer in its mill and whereby plaintiff would purchase $500 worth of stock.    On October 14, 1905, Leroy B. Simpson gave appellant bank an order in writing to turn the Hooker stock over

to plaintiff, and on October 16, 1905, appellant bank paid $200 of the $700 borrowed by plaintiff from the bank to perfect the title of plaintiff and wife to the real estate mortgaged by plaintiff and wife to the bank, and applied the other $500 to the payment of the Simpson note and the release of the stock accompanying said note as collateral. On October 24, 1905, appellant bank loaned defendant American Mill & Timber Company $2,800 for the purpose of meeting outstanding bills under the terms of a certain agreement then entered into. The bank placed this amount to the credit of said company and paid on orders of the American Mill & Timber Company about $1,800 or more, when it ascertained, about October 25, that the moneys were not being applied for the purpose provided in said agreement, and the bank thereupon charged off the remainder of the $2,800 and declined to pay further orders, and the American Mill & Timber Company immediately abandoned the property and its business, and appellant bank took possession of the property under the terms of the contract of sale by the bank to the timber company.

Respondent's alleged cause of action appears to lie in the charge, that appellant Cissna did not make such a disclosure to him of the affairs of the timber company as it was his duty to make under the circumstances; that, by reason of this suppression of the truth and by reason of Cissna's expression of confidence in the value of the stock, respondent was induced to part with his money. After a careful examination of the pleadings and the evidence, we are unable to find adequate support for this contention. Respondent admits that he applied for the position of saw filer, and was told that he could have the same only upon condition of his acquiring $500 worth of stock. He says the timber company directed him to go to the bank to make arrangements about the purchase of such stock, and told him that the bank's officers would give him full and reliable information as to the timber

company's financial affairs.    He went to the bank and applied for a loan with which to purchase the stock, and talked with Cissna, the bank's president, who told him of the indebtedness of the company to the bank.    Mr. Cissna's son, who was also connected with the bank, went with respondent to examine certain real estate which the latter offered as security for the loan.    Subsequently the loan was made in the sum of $700.    Respondent asserts that Cissna told him the stock was worth par and that he was getting a good bargain, and that his son did the same.    Both Cissna and the son dispute this.

As his chief complaint, respondent asserts that certain buildings of the timber company were not upon the land owned by it, and that certain skid roads upon which logs were hauled across the premises of others were there without the latter's consent, and that these matters made the property useless.    What Cissna and son may have said about the value of the stock, if anything, could have been but a matter of opinion.    It could scarcely be said to have misled respondent seriously, because the very fact that he was securing twenty shares of the face value of $2,000 for the sum of $500 would seem to be a circumstance well calculated to indicate that the stock was not at par, and to have put him upon inquiry.    It is questionable whether appellants were under obligation, under pain of personal liability, to tell respondent everything they knew about this timber company and its property.    But assuming that they were, we do not think that it is made to appear that the suspension of business by the timber company and the turning over of the property by it to the appellant bank was occasioned by reason of any trouble relative to the buildings or the skid roads.    The fact that the bank some time after the purchase of the stock by respondent made a loan of $2,800 to the timber company, would seem to indicate that it did not at that time regard the timber company as insolvent or in failing circumstances,

or unable to go on with its business because of the trouble about buildings, skid roads, or anything else; but it appears to us that the cause for the suspension of business by the timber company was its difficulty with the bank in regard to the manner in which it was using the $2,800 which it had recently borrowed, the bank claiming that the timber company, instead of paying its bills with this money, as it had agreed to do, was drawing and using the money for other purposes.

It is contended by respondent that the purchase of the stock was never consummated, and that he is therefore entitled to the return of his $500. This contention is based upon the fact that the timber company never issued any certificate of stock in lieu of the certificate left in the bank by Simpson, and for the payment of which the bank applied respondent's $500. We do not find anything in the evidence sufficient to prove that the bank was under any obligation to get this stock transferred on the books of the timber company. Simpson had left the stock in the bank as security upon a loan for which the bank held his note. In writing he authorized the bank to turn over the stock to respondent as soon as paid for. Respondent's $500 was applied to the payment of this note, and suitable entries made in the books of the bank at that time to indicate such payment, although the note remained in the bank until long afterwards. The stock became respondent's when the $500 was thus applied as payment therefor. The respondent was a man of fifteen year's experience in the mill business, and testified that he personally examined this mill and its facilities for doing business, and that he was competent to judge of the value of mill property. There is no claim that any question was ever asked the bank or any of its officers by respondent about the location of the buildings or the skid roads, and no misrepresentation is charged other than that alleged to have been made by the bank's officers relative to their opinion of the bargain

respondent was getting in making the purchase of the stock. Respondent knew the character of the property and knew the financial condition of the company, and took his chances upon the stock proving valuable or otherwise. The position of the buildings and the difficulties as to the skid roads not having in our opinion occasioned the loss which respondent sustained as a stockholder, we are unable to find facts showing a liability on the part of appellants. We think respondent failed to establish his case by a fair, or any, preponderance of the evidence.

As to appellants, the judgment of the honorable superior court is reversed, and the cause remanded with directions to dismiss the action.

HADLEY, C. J., MOUNT, RUDKIN, and CROW, JJ., concur.